This next case is case number 4-15-0515. In re The Commitment of David Shanks. Appearing for appellant is Attorney Rick Perticchio or is it Perticchio? Perticchio. Okay, thank you. And for the appellee, Attorney Daniel Lewin. And counsel, your appearance? Good morning, Mr. Chairman. David is here. All right. But you will not be arguing. All right, thank you. Mr. Perticchio, are you prepared to proceed? Yes, sir. You may. If it pleases the court, counsel, my name is Rick Perticchio. I have been appointed to represent the respondent appellant, David Shanks. We're appealing a jury verdict by the Circuit Court of Macoupin County, which resulted in the order being entered by the court declaring David to be a sexually violent person. There are really two issues. The first is whether the prosecutor made improper comments in her opening statement, resulting in the respondent being unable to receive a fair trial. And second, whether the state presented expert testimony sufficient to establish the needed elements for a declaration of David Shanks as a sexually violent person. The overriding concern for this court must be that the decision is based on the application of the science to the facts so that we avoid a person in a civil commitment proceeding being punished for crimes which he did commit, but which he has now already served his sentence. The First District Appellate Court in a 2014 decision of Henry, the commitment of Gavin, pointed out that never should civil commitment proceedings be used to further punish someone for their past crimes. Now, your honors, the state, in a case to declare someone a sexually violent person under the statute, must present evidence to show that this person had convictions of sexually violent offenses. That's one. Two, that the respondent suffers from a mental disorder. And three, that the respondent is dangerous to others because his mental disorder creates a substantial probability that he will engage in future acts of sexual violence. Now, the respondent does not dispute that he has two convictions, both out of the Circuit Court of McCoupin County, that cause him to have proper convictions of sexually violent offenses. That's the first requirement. But we will present the evidence did not show that the state met its burden and that the decision is against a manifest way to the evidence that the respondent suffered from the mental disorder, the second requirement of a civil commitment proceeding. But turn first to the statements of the prosecutor. The prosecutor, and I cite in my brief the actual wording, but what the prosecutor said in his opening statement was, because of the respondent's two convictions for sexually violent offenses, he is in the category of a sexually violent person. Wait a minute. That's what the trial is about. Now, is that standing in isolation enough to say, well, there goes a fair trial? Yes. When combined in isolation, no. Was an objection made to that? There was no objection made to that. Then how prejudicial was it? Well, Your Honor, we addressed that in our reply brief in this regard. And first I noted in the reply brief the trial attorney in this matter was my son, so I don't want to hide anything from the court. Okay. But the case law sided by the state to say, look, he didn't object, so it's waived. Was a medical malpractice action. Forfeited, not waived. Go ahead. You're correct, Your Honor. I apologize. Forfeited in a medical malpractice action. We're in an action here. It's really a wholly different action. It's a civil commitment proceeding, although it seems to be in the nature of a criminal act. Well, if it's a criminal case, it's still forfeited. You could try to argue plain error. It's a forfeited issue, isn't it? Well, it's forfeited unless, Your Honor, we think the more enlightened view is the view expressed by the first district and the Gavin 2014 case cited in our brief that talks about needing to protect the rights of the respondent and that a comment or statement that in itself may seem to be in isolation, not so significant that it's plain error, but it's exponentially affected if there is reasonable doubt as to whether this person should be civilly committed. So this is worse than plain error? Well, it's worse than plain error because when it's combined with the doubt that we think the evidence shows, that we think the State, and I'll get into the State, didn't meet its burden of showing evidence so that the very burden is against the manifest way of the evidence. This comment, then, where right off the bat the prosecutor said these two crimes make him be a sexually violent person, and I don't know that that's not a logical conclusion for a jury, but that's not the State's burden. The State has to show certain things, and particularly when it gets into proving that he has the mental disorder, a science applied to facts. We will admit the argument can be made that improper comment was not in itself sufficient, but wait and let's combine it with what is the argument on the State's expert evidence. Your Honor, the State was required to show that the respondent had a mental disorder. Now, the State presented two expert witnesses who both gave the opinion that the defendant, excuse me, the respondent, suffered from pedophilic disorder, and as a result of that he met all the standards of having a disorder and a substantial probability of commitment. But that's the question we have before the Court. When you take the undisputed facts and apply the scientific criteria as to what pedophilic disorder means, the verdict of the jury is against the manifest way of the evidence. Besides the two State witnesses, the defendant put on a witness who concluded that she ruled out pedophilic disorder. Why? Because there are certain criteria, and only if the facts meet that criteria can this expert opinion be given. Let's look at those criteria. The criteria from the DS-4, which was in effect, this case was in the hiatus between the DS-4 starting and the DS-5 came into effect, but both of them have the same criteria for pedophilic disorder. They require evidence of at least a six-month period of reoccurring intense sexual fantasies, sexual urges, or behavior of activities towards a prepubescent child, usually generally 13 years or younger. Secondarily, that the individual acted on these urges, and third, that the individual was at least 16 years and his victim was five years younger than he. That's the criteria. And counsel, does the six-month period have to be all during the time that the respondent is at least 16 years of age? That would be our argument, Your Honor, because otherwise you are taking a situation where acts when someone's less than 16, that the criteria says, we don't know if this was an adult comment, these may be transient feelings or urges. So the criteria, remember, this is the scientific criteria. You apply the facts to that. And it's not simple. We recognize that these experts are clearly smarter than I. But this is that criteria. Now bring in the facts. And sometimes facts can be disputed. But in this case, they're not. Let's look at the two convictions, keeping these criteria in mind. The 2004 conviction, yes, the respondent was 16 years of age and his victim was seven. It meets the age criteria. But the undisputed testimony of that conviction was he had only had urges or thoughts about this victim for about one week to one month. It's not six months. Now the state witnesses went back and said, well, but if you look at after he was released from the 2004 conviction, he was in a probation sexual disorder class. And there he self-admitted that when he was 14, he had had a sexual relation with an 11-year-old cousin. Now does that meet the criteria? No, he was only 14 years of age. We're not going to punish him. And it's not a matter of punishing him. And I correct myself. We're not talking about punishing him. We're talking about classifying him. And that's the overriding concern that this court must have is we're not punishing him. We're seeing if he is properly classified.  He was only 14 when he was having this relation with his cousin. And then at a time when he was 16, he had relations with a child that he was babysitting, a young child. But he was only 15 at the time. Now, so the state witnesses want to go back and say, well, he's supposed to have six months on this 2004 conviction to be the basis for the disorder. And the evidence says he only had a week or maybe as much as a month, but it wasn't six months. Well, let's go grab what he did before. First, they're self-reported. And secondarily, he denied them in his interviews with his own extra witnesses. He denied that they ever occurred. But even if they occurred, he wasn't 16. He's not the type of person that we're going to classify, categorize as a sexually violent person. These were acts when he was a minor. He was under 16 years of age. They can't give you the six-month period. The 2004 conviction doesn't meet the criteria. But then consider the 2010 conviction. At that time, he was 16. In fact, he was 23. But the victim's age was 16. She was not a pre-progression child. That's what this disorder that the state's experts wanted to say he had, the requirement, an element of finding someone as a sexually violent person. So the 2010 conviction in itself can't stand. And that's what the defendant's respondent's witness, his expert witness, told the jury. Now, to show you the extent of how this really affects you is consider the cross-examination of Dr. Edward Smith. He admitted the 2010 one under cross-examination, the 2010 offense, isn't sufficient because the child that was the victim was 16 years of age. He also agreed that the sexually reported effects technically didn't survive because the criteria required the victim to be less than 16. He wasn't. Excuse me, the respondent to be more than 16, and he wasn't. Now, he wouldn't give up on the opinion that he gave. But he gave up on the facts that need to be the basis of the opinion. This court is not going to need to claim that we are better psychologists, psychiatrists, than the witnesses. But the witnesses confirmed to the court, this is the criteria that must be made. And these are the facts of this case. And when you combine the two, their opinion that, well, first Dr. Edward Smith's opinion, that this was someone who had the mental disorder of paraphiliac disorder, isn't true. It doesn't mean it. And although he wouldn't back off of it, he backed off the facts. Leaving the disorder here, and we're putting the facts there. You've got to combine them. And his opinion didn't combine them. Let's consider the second state witness. That's Dr. Martha Bellows Smith. Now, she didn't want to back off as far. But in discussing the elements of what makes up the criteria for classification disorder, she told why we require six months. We require six months so that it is not just a fleeting urging, or a fleeting fantasy. Now, we're not saying that because he had this fleeting fantasy, and that he subsequently acted out on this fantasy, and performed oral sex on a girl who was seven years old at a time when he was 16, that he should get some type of award. No, he was convicted of that offense. He served his time for that conviction. But the criteria that these experts are supposed to base their opinion on says you have to show six months. It's not in the record. Their opinions are against the manifest way to the evidence. Their opinions aren't based on the record. Their opinions, therefore, cause this jury to enter a verdict finding that this was a sexually violent person against the manifest way to the evidence. Did your son move for a directive verdict on that basis? Your Honor, he did not. He did not, Your Honor. Was there a challenge made as to the admissibility of the opinions based on a flawed foundation? He did not challenge the opinions as such because I think they were admissible. He argued to the jury in his closing argument that they have the same argument to make to Your Honors. Well, wait a minute. You say that they're admissible? In the technical sense, they're admissible. Well, then it's weight and credibility. Is that right? It is weight and credibility. Prior effect. So now you're getting into a different realm because now you're suggesting that that is against the manifest way to the evidence, but you're not arguing on appeal that it was an inadmissible opinion based on an improper foundation. We are not arguing an inadmissible opinion. We are arguing against the manifest way and we recognize that there are some parameters that will make it arguments of weight that the jury determine what weight it should be given. But Your Honor, this is a special type offense proceeding. As I explained to Your Honors, in my opinion, the overriding cloud that must affect this court's view of this case is we're not here to allow 12 people to say, let's punish this guy for what he did in 2004, for what he did in 2010, for other revealed acts that he did at other times where he clearly did sexual acts of a deviant conduct. That's not what we're talking about. We're talking about civil commitment that requires the science be looked at and the facts be applied to it. The experts had all the proper foundational education and background to give opinions. They gave those opinions, but they're against the manifest way of the facts when it's applied to the science. That, when you get there, say now the prejudicial effect of this somewhat isolated comment that these two convictions caused this man to be categorized as a sexually violent person, now a jury is going to say, well, the prosecutor told us that. I don't know if that's what he said, but that's the risk we take. If we're talking about a sexually violent person categorization, we have to ensure that the proper evidence was submitted, redeemed to you that it was not. We also suggest in relief that not only should the conviction be overturned, the case should be dismissed because you can't change these facts. These are the facts. If not, he should at least be granted a new trial. Unless there are any further questions, I appreciate the court's attention. Thank you, Your Honor. Okay, thank you, Counsel. Mr. Lewin. Good morning, Your Honors. Good morning, Counsel. May it please the Court, Assistant Attorney General Daniel Lewin on behalf of the people. The Respondent raises two arguments on appeal, neither of which has merit, and we therefore ask this Court to affirm the Circuit Court's judgment. His first argument about prosecutorial error, as Justice Steigman noted, is forfeited. He hasn't argued for plain error in his briefs, and therefore he's waived plain error review. And in any event, there wasn't plain error. As to his second main argument about the manifest weight of the evidence, there was ample evidence in the record to support the jury's verdict, especially when viewing the evidence in the light most favorable to the State, as the Court must do, and giving due deference to the jury's expert credibility determinations. With Your Honor's permission, I'd like to begin with the manifest weight argument, which is the heart of this appeal. And sort of lost in the fray in the opening argument, and I want Your Honors to keep it in mind, is what the actual standard is for a manifest weight of the evidence challenge, which, as this Court noted in the Erb case, applies with equal force to a sexually violent person's proceedings. He has the burden of persuading this Court that even viewing the evidence in the light most favorable to the State, any reasonable jury would have reached the opposite conclusion of what this jury reached. And as this Court explained in the Erb case, that doesn't permit him to re-litigate the issues that were presented before the fact finder in the circuit court, doesn't permit him to ask this Court to re-weigh the evidence or re-evaluate the credibility determinations. The only question is in broad strokes whether there was any basis viewing the evidence in the light most favorable to the State for this jury verdict. And the other thing to keep in mind is, as Respondent noted, of the three elements he's only challenging one, he's expressly conceded in oral argument in the briefs, the first element, and there's no argument in the briefs or in oral argument as to the third element about his substantial probability of re-offense. So all we're talking about is whether a jury could have possibly concluded, viewing the evidence in the light most favorable to the State, that he has a qualifying mental disorder. And we think there's ample evidence in the record to do so. So two experts, Drs. Bellew-Smith and Dr. Smith, independently concluded that he suffers from pedophilic disorder, which is obviously a qualifying disorder under the Act, as well as antisocial personality disorder. And there was ample evidence, ample facts to support those diagnostic decisions. What about the argument that Mr. Verticchio in the six months claim that undermined the set of their opinions?  The first is that it's not how a manifest weight of the evidence review is supposed to work. So as the appellate court looking at that sort of argument, we can compare, for example, the Fields case, which is a Supreme Court case that he cited in his opening and reply briefs. A component of that case was a sufficiency of the evidence challenge. That Respondent had committed a 2005 offense when he was 21 and a 2000 offense when he was 15 years and 8 months old. At the trial court and on appeal, he argued, you're not allowed to count my 2000 offense because I wasn't yet 16 years old. You can't consider that in the duration of my pedophilic interests. And the circuit court rejected that argument, made a credibility determination. And our state Supreme Court said actually what he's asking to do, despite his protestations to the contrary, is to reweigh the evidence and challenge their diagnostic decisions about how they use the DSM-5. We don't do that on a sufficiency of the evidence, which is substantially similar to manifest weight on that sort of appeal. Was that a case where there was, as here, no objection to the underlying evidence in the first place of trial or motion to strike it? Your Honor, I'm not certain. I believe that's the case. Okay. Go ahead. So that's the top level response is how this court is supposed to review that sort of argument under a manifest weight of the evidence challenge. The second response to that is that the expert witnesses explained why it's appropriate to consider his 14 and 15-year-old offenses. Dr. Smith said at pages 104 and 105 of the third volume of the record, he said, what we're really looking for is a pattern of behavior over a course of time. And that was clearly present here. At ages 14 and 15, he had not only the offenses that Respondent discussed, an offense against his 11-year-old cousin, an offense against a 16-year-old, pardon me, a 6-year-old girl who his sister was babysitting. He also had offenses against an 8-year-old and another undisclosed but under 11-years-old child. So he had a series of offenses when he's 14 and 15 years old, and that continues past the diagnostically significant age of 16, that is into adulthood when he's 17 years old. He performs another offense. He performs oral sex on a 7-year-old girl. So the experts explained that the diagnostic criteria in the DSM-5 are there to capture broader ideas, make sure that it's not transient, and they found that here. It wasn't transient. It continued, started at an early age and continued into adulthood. And we can see why this survives a manifest weight of the evidence challenge by comparison to cases from sister districts and from our Supreme Court. We've cited, for instance, the Welsh case out of the second district in our brief. The Welsh case also was a claim of pedophilic disorder. In that case, as an adult, the respondent had committed a sexually motivated murder of a toddler. There was disagreement among the experts as to whether he qualified for pedophilic disorder. There was also disagreement among the experts as to whether to count previous offenses he had committed against family members when he was under the diagnostically significant age. And ultimately, the circuit court found that even though only two of the four experts who testified diagnosed him with pedophilic disorder, the circuit court found he had pedophilic disorder. And the appellate court said that we're not going to disturb that finding on appeal. The circuit court made – that was a bench trial. The circuit court made credibility determinations, weighed the evidence, and made its conclusions. And we don't relitigate that on a sufficiency of the evidence challenge. We think that this is a significantly stronger case than the Welsh case. We had two experts say that he has pedophilic disorder. Even the defense expert gave a rule-out diagnosis of pedophilic disorder. And I want to clarify something from the appellant's argument, that a rule-out disorder is sort of the opposite of what you'd think as a layperson. It's not, I've ruled out that he has pedophilic disorder. It's that I can't rule out that he has pedophilic disorder. I want future health care providers to be on alert for it. So a rule-out says, and Dr. Payne said this on the record, a rule-out says, it might be there, I'm not certain, I'm not ready to diagnose. So this is ample evidence in the record to overcome a sufficiency of the evidence challenge. His argument about the six months, as the experts explained, is not how the diagnostic criteria work, and certainly not how the diagnostic criteria work on appellate review of the sufficiency of the evidence. Talk about that just for a bit. Is the six-month period, does it start from a point after which the respondent turns age 16? It does not, Your Honor. Both as we saw in the Fields case where they said we're willing to consider an offense he committed before the age of 16 to determine whether he has persistent sexual interest in prepubescent minors, but also from the way the experts described it, Dr. Smith said they're looking for patterns of behavior and it does not have to start at the age of 16. Dr. Bellew-Smith said she actually characterized it as early-onset pedophilic disorder, which is to say that they are allowed to consider pedophilic-natured offenses that are committed before he turns 16. Really, ultimately what they're looking for is to make sure that it's not just transient. It's not related to a one-off life event. It's not exploratory. It's that he has persistent sexual interest in prepubescent minors. Dr. Bellew-Smith said at page 57, he's attracted to young children and he continues to be attracted to young children and he obviously acted on it. So they do count offenses to prove the six-month persistent interest starting before he's 16. Turning briefly back to the first argument, if Your Honors are willing, we're willing to stand on the brief as to why it's not plain error. We think that it's adequately outlined there, that in context it wasn't erroneous, but I do want to touch on the forfeiture issue, which I think bears brief mention. So there's no dispute there was no contemporaneous objection, no dispute there wasn't a post-trial motion, and no dispute that this Court held in Lovell that you need a contemporaneous objection to opening statements to preserve it on appeal. He doesn't claim plain error in the briefs or in oral argument, argues for some sort of different standard. However, if you look at the Gavin case out of the First District that he cites in support of that, Gavin actually found a forfeiture of a complaint against opening argument. If you look at paragraph 53 of Gavin, it says he didn't object, it's therefore forfeited, and then they reviewed for plain error because the respondent asked for it. He does not ask for plain error review here, and we think that this is an appropriate case to strictly enforce that forfeiture because he hasn't created a record for plain error review and he hasn't requested plain error review. So we'd ask that Your Honors find this argument forfeited. And if Your Honors, if there are no other questions. I don't see any. Thank you. Thank you. We'd ask you to affirm. Mr. Viticchio, rebuttal argument. Thank you. We acknowledge and accept our requirement to show that this verdict by the jury was against the manifest way of the evidence. Our argument on that is evidence in this case are some undisputed facts. We recognize the determination this court must make is that no reasonable jury would conclude, as this jury did, that he was properly classified as a sexually violent person because the facts are not undisputed. They did not present evidence of six months of urging or fantasies or acting. They didn't present any testimony to show that the six months prior to when he became 16, he was following through. They relied on self-reported evidence that was later contradicted by the defendant of these events that occurred when he was 14 and 15. They did not meet the fact of six months. It is a fact. That's the evidence. As to the 2010 conviction, it is a fact that the victim was 16 years of age. Now, Dr. Bellows-Smith, when asked about the age issue, said that, well, she agrees it's not uncommon for a 23-year-old male to be attracted to a 16-year-old female. It is not a deviant view. It is a requirement, the facts, that in the 2010 conviction, the victim was not a pre-progression child. We're talking about their ability applying these facts to meet this criteria. They gave the opinions. They had the background and qualification to give opinions. But when you apply that, it's against the manifest way of the evidence because they're just saying, well, enough's enough. This guy clearly has pedophilic disorder because of his tendencies. We're not talking about because of his tendencies. We're talking about the criteria, the DS4, the DS5, that they said they were given an opinion on. The Fields case, the real distinction in the Fields case is that there were two convictions, and the 2010 conviction in itself was sufficient to support the jury verdict. Why isn't this an argument, as Mr. Lewin suggests, which goes towards admissibility as opposed to weight? That is, if these were fundamentally flawed opinions because they did not meet the statutory criteria, why wasn't a motion to strike or some objection made to them? But having been admitted, why isn't this matter just the question of the weight to be given to this testimony by the jury? Well, I did not try the case, so I can't tell you why it wasn't made. It doesn't matter on that aspect. So the question is, for our purposes, why shouldn't we just view this as, he says, a manifest weight argument? You're essentially arguing that there's a problem with the expert testimony, and maybe there is, but the jury heard it, and the problem with the expert testimony doesn't undercut it entirely, perhaps, in the jury's eyes. Why shouldn't we be respectful of their determination? Well, Your Honor, I think that the witnesses were qualified to give their opinion. They were cross-examined on their opinion, and it brought out facts to show that the manifest weight of the evidence was contrary to their opinions. I recognize the deference given by the reviewing court to the decision of the jury. But can any jury conclude there was evidence of six months' urgings? No, they can't, because it's a fact. Well, they can conclude that I agree with the expert witnesses here who said this guy is a sexually violent person. Well, and that's, Your Honor, why I say the overriding concern with this court should be this is a civil commitment proceeding. We should not allow a jury to have the opportunity to punish someone for their past convictions and crimes for which they've served a time. Thank you, Your Honor. Okay, thank you, counsel. Thank you both. The case will be taken under advisement in a written decision.